Gaston, Judge.
 

 The material facts stated by the plaintiff in his bill, as constituting his claim for relief, are, that in November, 1819, he was appointed administrator of the estate of Benjamin Thomas, of Moore county, then lately deceased, and guardian of his five infant children, among whom, and a married daughter and the widow of the intestate, all the personal estate was distributable; that on the 13th of February, 1822, he paid over to the widow, and to the defendant, John Thomas, one of the wards who had attained full age, and to the husbands of such of the girls as were married, the sum of $142 39 cents each, as the true amount of their respective distributive shares; that at February Term, 1824, he resigned the guardianship of his remaining wards, and thereupon paid over to John Thomas, who was appointed guardian in his stead, the same sum for each of them; and that in this he thought he had honestly discharged his duty as administrator and guardian, each of the settlements having been made under the supervision of auditors appointed
 
 *200
 
 by the County Court. But the.bill charges that afterwards John Thomas and the rest of the next of kin of his intestate, filed a bill in equity against the plaintiff for an account; and a becoming old, and being very unwilling to engage in law, and conscious of having managed the estate with good faith,” agreed, before answering the bill, with the defendant, John Thomas, to refer the matter to Alfred Oliver and William McLane; that they made a report exhibiting a balance due from the plaintiff of more than six thousand dollars; and that this their report was set aside by the Court. The plaintiff states that the large amount, so reported due by the above named referees, arose in part from a claim of the following kind: In the life time of his intestate, a man of the name of Aughtry had taken charge of a stallion belonging to his intestate* and had executed a bond in the penal sum of $1,000, conditioned for returning the horse, at the end of the season, in good order, and to account for half the money which should be received fdr his services. Aughtry had returned the horse just before his intestate’s death, but in bad order, and had not accounted for the use of the horse; and, after the plaintiff administered, he settled with Aughtry and received from him one hundred dollars, in full satisfaction for all claims, and which the plaintiff deemed a full compensation; but the referees hold him- chargeable for the penalty of the bond and compound interest thereon. And the plaintiff states that the amount so reported was swelled improperly, because of the rejection of vouchers offered by him, which were legal, and ought to have been allowed. The bill then proceeds to charge, that upon the suggestion of the defendant, John,- that the plaintiff was about to remove his property out of the State, a
 
 ne exeat
 
 was issued in that suit, and he was commanded to give bond-,- with surety, in- the sum of eight thousand dollars,- conditioned not to remove the said property; that after this process came to the Sheriff’s hands, and before it was executed, he and the defendant referred the whole matter in dispute to the arbitrament of Stephen Berryman and Cornelius-Dowd, Jun’r.; that these arbitrators, some time in the year 1834, entered upon the performance of the duty assigned them, and had proceeded therewith- So
 
 *201
 
 far as to reject many charges and claims against the plaintiff, contained and allowed in the former report, and thereby to reduce largely the balance formerly Reported against him, when John Thomas stated to him that if the arbitrators reduced that balance much, he would not abide by their award; and proposed that they should settle the controversy between themselves, to which he agreed; that “ being without counsel, since the
 
 ne exeat
 
 issued, and being very much frightened by that process, ignorant about law, fearing, from the defendant’s conversation, that he would be finally stripped of every thing, for that he would have to pay the whole penalty of the Aughtry bond with cbmpound interest, and this would take every thing he was worth. — in this state of alarm and confusion, he stupidly and ignorantly agreed to give the' defendant, and in pursuance of the agreement did execute two bonds, one for the sum of $3,000, payable in notes on the 22nd November, 1835, and the other’ for $1,316, payable the 22nd November, 1834; and the defendant engaged to’ have the bill dismissed at his proper costs, and to procure from all the parties plaintiffs thereto, receipts in full and refunding bonds, and thereupon executed to the plaintiff a bond in the penal sum of $8,000, conditioned for the faithful performance of this engagement.
 

 The bill sets forth that afterwards he entered into a new" agreement with the defendant, whereby he engaged to deliver to the defendant eight negroes, at the agreed price of $2,400, and to convey to him a certain tract of land, which it charges to be worth at least $2,000, in satisfaction and discharge of the said bonds; and it dbólares that, in pursuance of this new agreement, he executed and delivered a bill of sale for the negroes, and that he
 
 tendered
 
 a conveyance of the land, upon defendant’s delivering f he receipts and refunding bonds, according to
 
 Ms
 
 engagement. The plaintiff charges that defendant refused to do this; alleges that the negroes are worth more than two thousand four hundred dollars; that defendant and a brother of his have entered into’' possession of said tract of land; and declares that when the plaintiff made this last agreement with the defendant, he did not believe he was indebted to the defendant, or to his broth
 
 *202
 
 ers and sisters; but that he entered into the same for the purP°se °f being freed from any controversy because of the bonds which, in an unguarded moment, when unfit, from aiarm and confusion, to know and assert his rights, he had executed unto the defendant. The plaintiff admits that the bill in Equity has been dismissed as agreed upon, although he complains of a disingenuous attempt to throw on him a part of the costs; and that the defendant has given him a credit upon the bond of $3,000 for $2,400, the price of the negroes so conveyed to him by the plaintiff, and complains that he has brought suit to compel payment of the residue, and also of the other bond, upon which no credit is indorsed. The prayer is that the bill of sale for the negroes may be cancelled, and the negroes re-delivered; that the action on the bonds may be enjoined; and that an account may be taken under the direction of the Court, of the estate of Benjamin Thomas, for which the plaintiff ought to be held responsible — he, the said plaintiff, thereby engaging to pay unto the persons entitled, whatever might be found due from him upon taking said account; and for general relief.
 

 The bill was filed in June, 1836, and John Thomas, who was the only defendant thereunto, put in his answer on the 1st of September following. The principal matters therein set forth are, that the bill in Equity referred to by the plaintiff, was filed
 
 bona fide
 
 for the purpose of obtaining a fair and full settlement with the plaintiff iu relation to his administration and guardianship, and under a full belief that in conscience a large sum was due from hrm to the claimants; that, at the request of the now plaintiff, without waiting for an answer, the matters in dispute were, by a rule of Court, referred to several persons chosen by the parties; that, these not'being able to attend to the business, Alfred Oliver and William McLane were, by the full consent of all parties, substituted in their stead; and that these found a balance due from the present plaintiff to the then complainants of $6,053 70 cents; and that this report was set aside, at his instance, because not made by those named in the rule of Court. With respect to the particular grounds of complaint stated in the bill against this Report, or the account therein set forth, the
 
 *203
 
 defendant says that it is not true that the plaintiff was therein charged with the penalty of the bond given by Aughtry. He says that in the account of the plaintiff returned to Court, the plaintiff debited himself with gl'60, the sum for which he sold the horse, and-for $100 received of Aughtry; and that in the account returned by Oliver and McLane, he is charged with the additional sum of $240, because of the impaired value of the horse when returned, for which Aughtry ought to have been compelled to make satisfaction; and he denies that any proper or legal voucher of the plaintiff was rejected by the said referees. Defendant says that at the term when this report was set aside, the plaintiff urged that the matters in dispute should be referred to the arbitrament of Cornelius Dowd, Jun’r., and Stephen Berryman, to which defendant assented; that the arbitrators entered upon the "business, and were- about making the balance nearly the same (a little less) as had been done before,- when plaintiff proposed that they, the parties, should settle the matter themselves;, and, after various propositions for that purpose on the part of the plaintiff, the defendant agreed, for himself and the other complainants in the suit, for whom he acted as agent, to receive the' sum of $4,316,'in full satisfaction-of all-demands; and in execution of that agreement, the bonds or notes mentioned in the bill, were executed by the' plaintiff, and the defendant executed to him a bond in the penal sum of $8,000, with condition to indemnify the defendant against the claims of his principals, the other complainants; that blank receipts for these to sign, were at the time written by Mr. Dowd, under whose supervision the whole business was conducted, and who prepared the notes of the plaintiff, as well as the bond executed by the defendant; that he has since had all these receipts signed as was agreed upon, and has tendered them to the plaintiff, who refused to receive them, and yet retains in his possession the defendant’s bond of indemnity.
 

 To the bast of his recollection, he says, there was no stipulation in the condition for procuring refunding bonds as alleged in the bill. He denies that this settlement was pressed upon the plaintiff, or that it was obtained from him'by operating on his fears, or that the plaintiff did it unadvisedly or
 
 *204
 
 in haste; and insists that it was done
 
 freely
 
 and deliberately, w*f'k°ut a^arm or confusion on the part of the plaintiff, and after ample time for full consideration. The answer further states, that the plaintiff, declaring an intention of removing to the Western country, and professing a desire to be enabled to pay off his notes, did, upon making the settlement, cause his property to be advertised for sale, and the defendant offered to take the sale notes, payable at one, two and three years, in discharge of the plaintiff’s notes; but afterwards, before the day of sale, the plaintiff proposed to make sale of a portion of this property to
 
 the defendant, and
 
 defendant finally agreed to buy eight negroes, at the price of twenty-four hundred dollars; that the plaintiff thereupon executed a bill of sale for the said negroes, and according to the agreement between them, lie credited thp price thereof on the larger of his bonds; that at the same time he offered to buy the tract of land mentioned in the bill at the price of $1,500, which he avers to be its value, but plaintiff not being willing to. accept that price, no bargain was
 
 then made for
 
 the land; that afterwards, upon defendant ascertaining that one ,of his brothers, Benjamin W. Thomas, was willing to take the lan.d from him at the price of $1,616, he offered the plaintiff that price therefor, and a sale of the land was then made accordingly, at th,e price of $1,616. That it was agreed by all the parties that the land should first be surveyed by the County Surveyor; that the survey was
 
 accordingly made; a
 
 deed for the land from the plaintiff to said Benjamin, prepared by the surveyor, and executed by the plaintiff; but the notes not being present, a credit fop the price of the land was not endorsed thereon; that an agreement having been entered into between the said Benjamin and the defendant, whereby the latter was to have a part of the land at the sum of $600, it was arranged that this part should be laid off and marked before the next County Court, and the deed should remain with the plaintiff till then, at which time it was to be proved and registered, and a deed from Benjamin executed to the defendant for his part. The answer alleges that the land was run off and marked, as agreed between the said Benjamin and himself; the notes delivered to Benjamin with
 
 *205
 
 directions to enter the additional credit on plaintiff surrendering the deed so retained by him, that the said Benjamin presented the said notes, required the said deed, and offered to enter the said credit; but the plaintiff refused to surrender the deed, or to take the credit, and instituted an action of ejectment to recover possession of the land which had been formally delivered by the plaintiff to said Benjamin. The defendant offers to credit the further sum of $1,616 upon the notes, upon the plaintiff surrendering the deed wrongfully so detained.
 

 There was a general replication to the answer, and many depositions have been taken on both sides. The most material of these will be stated.
 

 The account as taken by the first referees is not exhibited, nor the items thereof shewn. All that we know of it, besides what may be collected from the pleadings, is that it stated a balance against the plaintiff of $6,053 70 cents, and, that whatever errors it might contain, there is no evidence to show any dishonesty qr partiality in those by whom it was made out. It is in proof that the arbitrators, Berryman and Dowd, did enter upon the performance of their allotted duty, for which they had been chosen by both the parties, and had before them the account madp out by the former referees, which was a very long one; that after having proceeded through about half of it, they ascertained, to their satisfaction, errors in it against the plaintiff to thé amount of $1,737, which would be sufficient tq reduce the balance therein found, to the sum of $4,316'. This fact was communicated to the parties, and thereupon the defendant offered to the plaintiff to take that sum, and allow time for the payment of it, provided plaintiff would agree to put the arbitra-: tors to no further trouble; and at the same time, stated that if this proposition were not acceded to, he should insist on the ar? bitrators going through the accounts, and he would acquiesce in the result, whatever it might be; but in that event, would grant no further indulgence for payment than the law should allow; that the plaintiff required time until the next day to decide on the proposition, and defendant readily agreed not only to this, but to any further time, which plaintiff might
 
 *206
 
 desire for that purpose; that before the next day,
 
 one
 
 of the arbitrators, Mr. Dowd, proceeding in the mean time with his investigation of the papers, was induced to believe that there were further errors in the account of
 
 the
 
 referees injurious to the plaintiff, amounting to about $1,000, and distinctly announced this fact to both of them on the succeeding day; that the defendant declared that he would abide by the proposition made' the; preceding day, or, if this were not accepted, he should take whatever might be found due, be it little or much; that the parties retired to confer with each other, and returning, announced that they had concluded an agreement, and that, according to this agreement, Mr. Dowd wrote the notes for the plaintiff, and a bond of indemnity for the defendant, which were thereupon executed. With respect to the sale of the negroes, it is in proof that this was, some time after, deliberately made upon an agreed price, and that credit, upon the execution of the bill of sale, was entered in the presence of the parties for the price aforesaid, and, although there is some discrepancy in
 
 the
 
 opinions of the witnesses as to'the value of the negroes, we are not authorized to say that the price was
 
 not
 
 a fair one. We have no evidence in the case as to the price agreed upon for the land. It is in proof that it was surveyed by the County Surveyor, accompanied by the plaintiff and defendant; that, after this, the surveyor, at the request of the parties, prepared a deed, but which was not then executed, because the de. fendant requested that the execution of it might be deferred until his brother, Benjamin W. Thomas, should return from Fayetteville; that then a survey was made of a part of the land, which it. was understood the defendant was to take of his brother Benjamin, to whom the plaintiff was to make a deed for the whole; that, after this survey, and at the request of the plaintiff, the- defendant, and the said Benjamin, the surveyor wrote the deed from the plaintiff to said Benjamin, which was executed by the plaintiff; and that afterwards, this deed was handed back to the plaintiff, to be kept by him until he and the defendant should come-'to a final settlement and exchange or cancel their papers, which was appointed to be done on a subsequent day, at a different place. And it
 
 *207
 
 is also in proof that, after the day so appointed, and before the institution of this suit, the said Benjamin offered, in behalf of his brother the defendant, the receipts which had been prepared by Mr. Dowd, signed by the complainants in the suit in equity, and desired to have his deed for the land returned; that the plaintiff offered to give up the deed, if his notes were surrendered; that the said Benjamin offered to give up one of the notes, and endorse so much on the other, as, in addition to the credit already given,, would amount to what he understood from his brother to be the price of the negroes and land, which would leave a balance of. about $300 yet due from the plaintiff; and that, in consequence of this disagreement, the deed was not returned, nor the credit entered on the notes, nor the notes surrendered.
 

 There is little further evidence that can affect the determination of the cause, unless it be of boasts on the part of the defendant, of a most disreputable character, that he had, by his superior management, gotten more from his uncle than he could have obtained at law.
 

 We have a strong impression that this transaction has been a very unfortunate one for the plaintiff, and that the defendant has made unjust gains thereby, much to the plaintiffs injury. But, notwithstanding this impression, we are unable to discover any satisfactory ground upon which we can interfere to afford him relief. The object of the bill is to have his own contract rescinded, and it is not easy to see any distinct ground
 
 alleged
 
 to warrant such a prayer. He does not ask for relief on the ground of imbecility of intellect.- He states, indeed, that he is unacquainted with law and legal proceedings; but such is the case of the vast majority of the community, who theretoie are under the necessity,, when they want information on these subjects, to apply for advice to professional men. The bill does not allege the existence of any confidential relation between the parties, which induced a reliance of the plaintiff on the representations of the defendant; nor does it set forth any representations of the defendant inconsistent with truth. The plaintiff declares that he was very much frightened by a process called a
 
 w
 
 exeat, which had been issued against him; but it is not pretended
 
 *208
 
 that this process was falsely sued out
 
 for the purpose
 
 of exciting terror; and until the nature of it is more distinctly shewn, we must assume that it was such process as under t[le circumstances of the case, it was proper for the then complainants to ask for, and for the Court to order. The real cause of his alarm appears to have been the very large balance reported against him by the first referees. If he really believed that little or nothing was due from him, such a report, although sCt aside,- might indeed óccasion serious uneasiness; but unless it was obtained by some unfair practice or management, or unless it was unfairly
 
 availed
 
 of to terrify and alarm him, it cannot be regarded as placing him in a state of moral duress. But Upon the proofs, the case, with respect to the alleged alarm and confusion, is weaker than the bill makes it. The bill charges that the plaintiff’s alarm was increased by the threat of the defendant not to abide by the award, if the arbitrators riiuch reduced the heavy balance found against him in the former report. No such threat appears to have been held out. On the contrary, both the arbitrators testify that the defendant unequivocally and repeatedly avowed his determination to abide by the award, whatever the result might be, if the parties did not come to a settlement. The only semblance of a threat was that, in case a compromise were not made, and the arbitrators had to close the business, he should collect the balance, which they might award him, by the regular course of the Court. And certainly a declaration that he would use his rights in this respect, cannot be characterised as a menace. Besides, if there was confusion or alarm on the part of the plaintiff, there was no importunity or precipitation on the part of the defendant— Full time was given — more was offered — for deliberate consideration of the terms proposed. Before acceptance of them he was fully apprised, by one of the arbitrators, that his researches rendered it probable that the result of the arbitration, should it be conducted to a close, would- be much more favourable to him than the proposed compromise. And there were both of the arbitrators at hand, men of business, undoubtedly disposed to do him justice, of whom he could ask for information on any particular point, whereon he needed
 
 *209
 
 information to enable him to come to a prudent conclusion. But, if we should allow that, at the time of entering into the agreement of compromise, he was alarmed or surprised into an unequal bargain, there seems to have been no confusion or want of free volition, when this bargain was subsequently acted upon by a sale of the negroes. He states in his bill that he then believed that he did not owe what he had engaged to pay, but nevertheless preferred to do so rather than to engage in a controversy on the subject, and therefore concluded, to execute the bargain in part by this sale of property. Now if it clearly appeared that the original bargain had in fact been procured by imposition — by terrors improperly excited or unfairly availed of — by misrepresentation of any kind — by taking any advantage of ignorance or error, it may be admitted that this subsequent act, in execution of the bargain, would not have operated in this Court as a confirmation thereof, unless it was seen that when it was done, the party was cognizant of his right, or of the facts on which his right depended, to vacate and annul the bargain. But where this does not distinctly appear, such subsequent conduct is material to explain and give a character to the motives which operated in the forming of the original bargain. We are obliged to say that the plaintiff has not made out á case of fraud, mistake, or surprise, such as, by the usages of this Court, authorizes us to liberate him from his engagements.
 

 Nor can the bill be upheld, as the counsel for the plaintiff has tried to uphold it, as one properly brought to surcharge and falsify an account stated. What is the account which it is the purpose of the bill to unravel? Not that taken by the first referees — for this account has been set aside
 
 in ioto.
 
 Not an account stated by the arbitrators — for they
 
 stated
 
 no account. They were going on with the investigation of the matters of charge and discharge between the parties, with the view to stating an account, when they were discharged from further proceeding thereon by the act of the parties. Not an account stated by the parties themselves, for they never
 
 attempted
 
 to state any account, but agreed, the one to give, the other to accept, a gross sum in full satisfaction of whatever
 
 *210
 
 might be due, be it more or less, and without undertaking to ascertain the amount due.
 

 The bill prays for no relief in respect to the contract for the sale of the land, pnd is wholly silent in relation to any conveyance having- been made thereof. That, therefore, is not a matter here in litigation.
 

 Upon the whole, we deem it our duty to dismiss the bill; but, for obvious reasons, we make no decree for the defendant to recover his costs.
 

 Per Cub.iaim. Bill dismissed without costs.